

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NEM:MND
F. #2024R00518

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

June 20, 2024

<u>By E-mail and ECF</u>

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Michael Rosendary
            <u>Magistrate Docket No. 24-MJ-429</u>

Dear Judge Scanlon:

      The government respectfully submits this letter in support of its request for an order of detention pending trial for the defendant Michael Rosendary. The defendant has been charged with violating Title 18, United States Code, Section 844(f) (malicious damage or destruction of property by means of fire or explosives) after he entered a New York City Housing Authority (NYCHA) apartment building after midnight, doused a victim's apartment door with accelerant, lit it on fire and fled as a fire broke out in the hallway. Because the defendant poses a significant danger to the community, he should be detained pending trial.

    I.    <u>Background</u>

      On the afternoon of May 16, 2024, the defendant had an argument via text message with his former partner, with whom he shares two children (the "Victim"). The Victim lives on the fourteenth floor of a NYCHA building in Brooklyn (the "Building"). At approximately 12:18 a.m. on May 17, 2024, the Victim, who was asleep on her couch, noticed a glow coming from underneath her front door and directed her daughter to call 911. The front door of her home had been lit on fire.

      Emergency responders arrived and managed to extinguish the fire, which had spread down the hallway. An FDNY canine exhibited a positive alert for the presence of accelerant in the hallway of the Building.

Security camera footage from a gas station located approximately six minutes from the Building captured the defendant at approximately midnight on May 17, 2024 appearing to make a purchase of gas at the station window. At approximately 12:13 a.m., security camera footage from the inside the Building showed the defendant enter the Building carrying a water bottle filled with what appears to be gasoline and get on the elevator. At 12:16 a.m.—minutes before the 911 call reporting fire in the Building—the defendant is seen fleeing the Building.

II. <u>Legal Standard</u>

Under the Bail Reform Act, Title 18, United States Code, Section 3141 <u>et seq.</u>, federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).[1] A finding of dangerousness must be supported by clear and convincing evidence. See <u>United States v. Ferranti</u>, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987).

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release and (4) the weight of the evidence against the defendant. See 18 U.S.C. § 3142(g).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant might engage in criminal activity to the detriment of the community.'" <u>United States v. Millan</u>, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." <u>Millan</u>, 4 F.3d at 1046; <u>see also</u> <u>United States v. Palmer-Contreras</u>, 835 F.2d 15, 18

---

[1] "A violation of 18 U.S.C. § 844(f)(1), which prohibits the malicious damage or destruction of government property by means of fire or explosives, is categorically a crime of violence because its elements include the use of physical force against the property of another, specifically the federal government." <u>Al-'Owhali v. United States</u>, No. 20-CV-0832 (LAK), 2020 WL 4194635, at *1 (S.D.N.Y. July 21, 2020), <u>aff'd sub nom.</u> <u>Al –'Owhali v. United States</u>, 36 F.4th 461 (2d Cir. 2022); <u>United States v. Agnello</u>, 101 F. Supp. 2d 108, 110 (E.D.N.Y. 2000) (offenses involving arson are crimes of violence within the meaning of the Bail Reform Act).

(1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"). Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

Under the Bail Reform Act, the government may proceed by proffer. Ferranti, 66 F.3d at 541. Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Ferranti, 66 F.3d at 542.

### III.     The Defendant Should Be Detained Pending Trial

#### A.      Nature and Circumstances of the Crime

The defendant's criminal conduct was extraordinarily dangerous. After midnight, the defendant snuck into a large apartment building housing many families (many of whom, given the hour, were likely sleeping) and attempted to light their homes on fire with the aid of an accelerant. This is profoundly dangerous conduct and shows a wanton disregard for members of the community. The fire had already begun to spread from the Victim's door and could easily have continued to spread causing widespread destruction to both lives and property. The results could have been tragic. The defendant's conduct threatened the safety of multiple human lives, from the Victim and the first responders, to the residents of an entire apartment building. See, e.g., United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995) ("evidence that [defendant] purposefully started a fire in a building . . . at about 11:00 p.m. on a week night, when most of the building's residents were at home" and "put at risk numerous tenants" was clear and convincing evidence of danger to community).

#### B.      History and Characteristics of the Defendant

The defendant's history and characteristics demonstrate that he is a danger to the community. The defendant has 11 prior arrests and one prior felony conviction. The defendant also has serious pending state felony charges, which stem from an incident in September 2023 where he allegedly shot a firearm into the air after earlier threatening individuals with the firearm. The defendant has been charged with two counts of violating N.Y.P.L § 265.03 (Criminal Possession of a Loaded Firearm in the Second Degree, a Class C felony); as well as charges for violating N.Y.P.L. § 265.02 (Criminal Possession of a Weapon in the Third Degree); N.Y.P.L § 265.01 (Criminal Possession of a Weapon in the Fourth Degree); and N.Y.P.L § 120.25 (Reckless Endangerment). That case is ongoing.

Perhaps the most notable, and most concerning, is the defendant's history with respect to criminal conduct similar to that currently charged in the Complaint. In 2006, the defendant was arrested for violating N.Y.P.L. § 150.05 (Attempted Arson in the Fourth Degree) and N.Y.P.L. § 120.25 (Reckless Endangerment in the First Degree) after a female victim refused to let the defendant into her apartment, and he returned later, poured

flammable material on her apartment door and lit it on fire.[2] The defendant's demonstrated willingness to repeat such dangerous behavior—with multiple victims—demonstrates that he presents a danger to the community and detention pending trial is necessary.

    C.    Seriousness of the Danger to the Community

Given the conduct outlined above, releasing the defendant would present a serious danger to the community. Here, the defendant has demonstrated that he presents a significant danger, both to the Victim, and also members of the broader community. In light of the fact that the defendant was not deterred by his most recent state arrest in October 2023—where he was released pending trial—there is very little reason to believe that he will be deterred by this arrest. Given his increasingly troubling conduct, there is very little basis to think the defendant will respect the Court's orders regarding terms of pretrial release.

    D.    Strength of the Evidence

The evidence against the defendant is strong. The defendant is captured on security camera video at a gas station, located minutes away from the Victim's apartment building, at midnight on the night of the fire. Security camera footage from the gas station showed the defendant wearing jeans, a grey hooded sweatshirt, a dark shirt and black and white horizontally striped shoes with a large orange emblem on the outside of the shoes. The Victim—who has known the defendant for over 20 years—reviewed the video and identified the defendant. Security camera footage at the Victim's apartment building then captured the defendant—wearing the same outfit as seen at the gas station—enter the Victim's building at approximately 12:13 p.m. while carrying a water bottle containing yellowish liquid (which appears to be some type of gasoline or accelerant). The defendant is then captured on video fleeing the building minutes before 911 was called.

---

[2] The defendant ultimately accepted a plea to violating N.Y.P.L § 215.50 (Criminal Contempt in the Second Degree).

E. <u>Conclusion</u>

For the reasons set forth above, the government submits that no condition or combination of conditions will assure the defendant's return to court or the safety of the community, and therefore requests that the defendant be detained pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ Molly N. Delaney
Molly N. Delaney
Assistant U.S. Attorney
(718) 254-7861

cc: Clerk of Court (VMS) (by E-mail)
Counsel of Record (by E-mail)